# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| NATIONAL ASSETS & COMPANY, LLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| FIRSTKEY MASTER FUNDING 2021-A COLLATERAL TRUST, U.S. BANK TRUST NATIONAL ASSOCIATION AS COLLATERAL TRUST TRUSTEE, | ) ) ) ) ) ) ) ) ) ) |
| Defendant. | ) |

Case No.: 2:24-cv-0400-AMM

## MEMORANDUM OPINION ON PLAINTIFF'S AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

This matter comes before the court on cross motions for summary judgment filed by plaintiff National Assets Company, LLC ("NAC"), Doc. 22, and defendant, U.S. Bank Trust National Association as Trustee for FirstKey Master Funding 2021-A Collateral Trust ("the Trustee"), Doc. 23. For the reasons explained below, NAC's motion is **DENIED**, and the Trustee's motion is **GRANTED**.

## I.   BACKGROUND

This case arises from a mortgage dispute between the Trustee and NAC regarding a residential property in McCalla, Alabama. The parties filed a stipulated

statement of facts, *see* Doc. 21, which establishes:

"The Property [at issue] was formerly owned by Lance C. Langley and Theresa Weigel . . . (the 'Former Owners')." *Id*. ¶ 2. "On or about March 21, 2006, the Former Owners executed a mortgage on the Property . . . in favor of Mortgage Electronic Registration Systems, Inc. . . . ." *Id*. ¶ 4. "On November 1, 2022, [this] Mortgage [was assigned] to the Trustee . . . ." *Id*. ¶ 5. "The Former Owners defaulted for failure to make payments under the Mortgage." *Id*. ¶ 6. "In November 2022, the Trustee initiated foreclosure proceedings pursuant to the Mortgage." *Id*. ¶ 7. "At the foreclosure sale on December 14, 2022, the Trustee purchased the Property with a credit bid of $60,568.96." *Id*. ¶ 9. This bid equaled the total debt owed by the Former Owners to the Trustee. *See* Doc. 22 at 10. "On December 20, 2022, the auctioneer for the Trustee executed a 'Mortgage Foreclosure Deed' conveying the Property to the Trustee . . . ." Doc. 21 ¶ 10.

"On January 6, 2023, the Trustee sent a 'Notice to Vacate and Demand for Possession' to each of the Former Owners . . . ." *Id*. ¶ 11. "The Notices to Vacate demanded the Former Owners vacate the Property and stated that, 'if the Property is not vacated within ten (10) days after the date of this letter the right of redemption of the mortgagor(s) and/or anyone holding possession of the Property will be

2

forfeited.'" *Id*. ¶ 12. "The Notices to Vacate also recited the language of Ala. Code § 6-5-251." *Id*. ¶ 13. "The Former Owners failed to vacate the Property within ten (10) days of receiving the Notices to Vacate, which they received on January 13, 2023." *Id*. ¶ 14.

"On September 5, 2023, NAC purchased the Property from the Trustee for $160,000[]" and "[t]he Trustee conveyed the Property to NAC by a Special Warranty Deed." *Id*. ¶¶ 17–18. On "September 7, 2023," "the Former Owners quitclaimed any and all rights they held in the Property to NAC." *Id*. ¶ 19. On "October 16, 2023[,] . . . NAC requested payment by the Trustee of the surplus funds[, $99,401.01,] from the sale of the Property by the Trustee to NAC." *Id*. ¶¶ 20–21. "The surplus funds sought by NAC represent the difference between the Property's sale price to NAC on September 5, 2023 ($160,000) and the amount the Trustee credit bid to purchase the Property at the foreclosure sale on December 14, 2022 ($60,568.96)." *Id*. ¶ 22. "The Trustee did not respond to the demand by NAC." *Id*. ¶ 23.

On December 21, 2023, NAC filed a complaint for "Breach of Alabama Law" and "Conversion" alleging that it is "entitled to the surplus otherwise due to the Former Owners." Doc. 1-1 ¶¶ 23, 33. Both parties moved for summary judgment on

3

NAC's claims. S*ee* Docs. 22[1], 24. These motions are fully briefed. *See* Docs. 25–29.

In NAC's reply brief in support of summary judgment, it states that "NAC does not believe that a conversion claim can be successful" and that such a claim "is likely inappropriate here." Doc. 28 at 9. NAC argues that "[i]nstead . . . this matter relates to a breach of the Trustee's 'trustee-like' duty to account to its borrower . . . or their assignee . . . for surplus funds." *Id*. at 10. Accordingly, the Trustee's motion for summary judgment on NAC's Conversion claim is **GRANTED**. The only claim remaining before the court is NAC's Breach of Alabama Law claim. *See* Doc. 1-1 ¶¶ 17–26.

## II.   LEGAL STANDARD

Summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the moving party has carried its burden, Rule 56 requires that the

---

[1] NAC's motion states that it "moves for the entry of summary judgment in its favor as to all counterclaims asserted by defendant." Doc. 22 at 1. No counterclaims have been asserted by the defendant. NAC later requests "that the Court grant summary judgment as to NAC's claims in this matter." *Id*. at 15.

nonmoving party "go beyond the pleadings" and establish that there is a material fact in genuine dispute. *Celotex*, 477 U.S. at 324–25; *see also* Fed. R. Civ. P. 56(c)(1)(A). A fact is "material" if it could "affect the outcome" of the case. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (internal quotation marks omitted). A material fact is in "genuine" dispute if a reasonable jury could return a verdict in favor of the nonmoving party. *Id*.

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014).

### III. ANALYSIS

NAC argues that it "is entitled to the surplus profit . . . from the Trustee's resale of the Property following foreclosure" because of Alabama's "principle that a lender is entitled to have its debt repaid, with interest, but is not entitled to a windfall made up of the property owner's equity in the foreclosed property." Doc. 22 at 7. NAC argues that permitting the Trustee "to foreclose on the Property at 39% of its value and then reap the benefit of $100,000 in equity which belongs to the Former

5

Owners (and was conveyed to NAC) . . . shock[s] the conscience." *Id.* at 10.

The Trustee argues that "NAC's claims are contingent upon whether the Former Owners had statutory rights of redemption at the time NAC purchased the Property and received the purported rights of the Former Owners." Doc. 24 at 9. It argues that "the Former Owners forfeited their rights of redemption in January 2023, and thus, the redemption period expired long before NAC's purchase of the Property and purported assignment." *Id.*

NAC disagrees that the redemption period is dispositive and instead argues that "[t]he critical issue . . . is ensuring that the Trustee does not profit from the Former Owners' equity while depriving the Former Owners of the benefit of their hard-earned equity." Doc. 22 at 14.

Under Alabama law, upon a foreclosure sale, all rights of the mortgagor, except for the statutory right of redemption, are terminated. *See Ex parte GMAC Mortg., LLC*, 176 So. 3d 845, 850 (Ala. 2013); *Garvich v. Assocs. Fin. Servs. Co. of Ala.*, 435 So. 2d 30, 32 (Ala. 1983). The statutory right of redemption allows "[a]ny mortgagor" to redeem "real estate, or any interest therein" when it "is sold" by "pay[ing] or tender[ing] to the purchaser . . . the purchase price paid at the sale" among other costs. Ala. Code. §§ 6-5-248, 6-5-253. However, if the "debtor or

6

mortgagor" fails to deliver "possession of the land . . . within 10 days after written demand for the possession has been made by . . . the purchaser[]," the statutory right will expire. Ala Code. § 6-5-251(a); *see also Steele v. Fed. Nat'l Mortg. Ass'n*, 69 So. 3d 89, 93 (Ala. 2010) (explaining that "[s]ection 6-5-251 . . . provides . . . that a party failing to deliver possession within 10 days after receiving a written demand for possession forfeits his statutory right to redeem the property").

Here, it is undisputed that on January 6, 2023, the Trustee made a written demand on the Former Owners to vacate the property within ten days. *See* Doc. 21 ¶¶ 11–12. It is also undisputed that the Former Owners received the demand on January 13, 2023, but failed to deliver possession within ten days. *See id*. ¶ 14. Accordingly, the Former Owners' statutory right of redemption terminated on January 23, 2023. *See Watts v. Rudulph Real Est., Inc.*, 675 So. 2d 411, 412–13 (Ala. 1996) (explaining that the debtors had only ten days from the date they received the written demand "to either surrender possession of the property, in order to maintain their statutory right to redeem the property, or to pay the redemption price to" the purchaser).

Notwithstanding that termination of the statutory right of redemption, NAC argues that it is owed the profit from the Trustee's sale to NAC. *See* Doc. 22 at 13–

7

15.

NAC's argument that it is owed the profit from the Trustee's sale is unsupported by Alabama law for three reasons. First, the longstanding rule in Alabama is that "a mortgagee who purchases the mortgaged property at a foreclosure sale and then resells it to a third party during the statutory redemption period is required to apply the profit . . . to the reduction of the mortgagor's debt." *Springer v. Baldwin Cnty. Fed. Sav. Bank*, 562 So. 2d 138, 139 (Ala. 1989); *see also Johnny Ray Sports, Inc. v. Wachovia Bank*, 982 So. 2d 1067, 1075 (Ala. 2007) (explaining that "[t]he mortgagee . . . is obligated to apply [the] profit realized after foreclosure and during the redemption period to the reduction of the mortgagor's debt" because "[t]he profit realized by the mortgagee upon resale of foreclosed property during the redemption period is derived from the value of the property itself[]") (cleaned up). But here, the Trustee credit bid an amount that equaled the total debt owed by the Former Owners at the foreclosure sale on December 14, 2022. *See* Doc. 21 ¶¶ 9, Doc. 22 at 10. NAC admits that it "did not assume any of the Former Owners' debt by acquiring their interest in the Property because no such debt existed at the time of the conveyance from the Former Owners to NAC." Doc. 25 at 12. Accordingly, as of the Trustee's sale to NAC on September 5, 2023, there was no "mortgagor's

debt" requiring "reduction" using the Trustee's profit. *Springer*, 562 So.2d at 140.

Second, although precedent dictates that a mortgagee is required to apply profit to the mortgagor's debt "during the statutory redemption period," *id*. at 139, the Trustee made profits from its sale to NAC on September 5, 2023, over seven months after the redemption period expired, *see* Doc. 21 ¶¶ 14, 17. While NAC argues that "the redemption period is an arbitrary procedural marker," Doc. 22 at 14, it cites no supporting precedent, *see id*. at 13–15. As such, there is no basis for NAC's argument that the Trustee had a "'trustee-like' obligation to account to NAC . . . for the surplus proceeds," Doc. 25 at 8, over seven months after the redemption period expired.

Finally, NAC argues that it has a "right to surplus proceeds," Doc. 25 at 10, from the Trustee's sale because the Former Owners quitclaimed "any and all rights" including "any rights of redemption" to NAC on September 7, 2023, Doc. 20-10 at 2. But it is settled that a transferee "acquire[s] no greater—or different—rights than the rights" possessed by the transferor at the time of the transfer. *Richardson v. Stanford Props., LLC*, 897 So. 2d 1052, 1059 (Ala. 2004). Having allowed the statutory redemption period to expire, the Former Owners maintained no rights in the property as of January 23, 2023. *See Ex parte GMAC Mortg., LLC*, 176 So. 3d

9

at 850. As such, NAC did not obtain any rights, to proceeds or otherwise, through the quitclaim deed executed over seven months later.

When the Trustee sold the property to NAC, the statutory redemption period had expired, and the Former Owners had no rights to convey. Accordingly, the Trustee did not breach Alabama law by declining to apply its profit to NAC's benefit.

## IV.  CONCLUSION

For the reasons explained above, NAC's motion for summary judgment on its Breach of Alabama Law and Conversion claims, Doc. 22, is **DENIED** and the Trustee's motion on these claims, Doc. 23, is **GRANTED**. The Clerk of the Court is **DIRECTED** to close this case.

**DONE** and **ORDERED** this 22nd day of July, 2025.



_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE